IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

MYTOSHA MERRITT                                        PLAINTIFF

VS.                        Case No. 05-CV-1027

ALBEMARLE CORPORATION                                  DEFENDANT

## MEMORANDUM OPINION

Before the Court is Defendant Albemarle Corporation's ("Albemarle") Motion for

Summary Judgment.  (Doc. 17)  Plaintiff Mytosha Merritt has responded.  (Doc. 19)  Albemarle

has filed a reply.  (Doc. 22)  The Court finds the motion ripe for consideration.

## I.  BACKGROUND

Mytosha Merritt started working for the Shaw Group, Inc. ("Shaw") in April 2002.

Merritt received all of her benefits from Shaw.  Shaw is engaged in the employee/staff leasing

service business and leases employees, including Merritt, to work at Albemarle's brine plant

located in Columbia County, Arkansas.

After working for four months as a general laborer, Merritt was assigned to work with

Albemarle's PM/PD Group.  Merritt became a lubrication technician with the Lubrication Group,

a subgroup of the PM/PD Group.  The PM/PD Group was responsible for maintaining rotating

equipment such as pumps, compressors, fans, blowers, and centrifuges at Albemarle's plant and

at the salt water wells in the fields that supply brine to the plant.  The Lubrication Group

consisted of three people, Merritt and Eric Eades (lubrication technicians) and Greg Dodson.

Dodson was a Reliability Technician.  Merritt and Eades were both Shaw employees who were

leased to Albemarle.  Dodson was an Albemarle employee.  Jason Bitting was in charge of the

PM/PD Group.

Dodson assigned Merritt and Eades their work and made sure they did their work properly. On one occasion, Merritt believed Eades was about to lubricate a machine without locking and tagging out the machine, which is against safety procedures, and told Dodson. Dodson corrected Eades and made sure he followed appropriate lock out/tag out procedures. Dodson also evaluated Merritt's performance. Dodson did not, however, have the authority to fire Merritt. While Merritt's Shaw supervisors knew Merritt was a lubrication technician, they did not know the tasks she performed everyday. Some of the lubrication technicians' tasks required both Merritt and Eades to work together. Other tasks only required one lubrication technician to perform the work. Merritt considered Eades to be an unsafe worker. She observed Eades working on machines on five or six occasions without locking and tagging out the machine. Merritt reported Eades' conduct to Dodson.

Approximately three or four months after Merritt started to work in the Lubrication Group, Merritt and Dodson were driving in a truck in a brine field. While in the truck, Dodson told Merritt he liked her and "wanted more." Dodson then attempted to fondle Merritt. When Merritt resisted, Dodson threatened to contact her supervisor at Shaw and get her fired. Faced with this threat, Merritt ceased resisting Dodson's advances and they had sex in the truck. During the time Merritt worked in the Lubrication Group, Dodson and Merritt had three more sexual encounters while in the brine fields that were nearly identical in nature.

After the second sexual encounter, Dodson began calling Merritt at home, asking her to meet him somewhere or if he could pick her up at her house. Merritt initially resisted these invitations, but Dodson threatened her job again. Merritt decided to go with Dodson after he threatened her job. During some of these encounters, Dodson would take Merritt to a hunting

lodge.  Other times they would drive back roads in Dodson's vehicle.  During these encounters,

Dodson would fondle Merritt, they would have sexual intercourse, or oral sex.  These encounters

occurred more than 10 times while Merritt was working in the Lubrication Group.  Merritt

admits all of the sexual encounters were consensual, but she testified they were not welcome.

Merritt testified she participated in these sexual encounters because Dodson threatened her job or

assigned her work with Eades, who Dodson knew Merritt thought was an unsafe worker.

On June 16, 2004, Merritt quit her job.  On that day, Merritt came to work and started

shaking and crying.  Merritt, on the verge of a nervous breakdown because of Dodson's conduct,

went to see Bitting.  Crying, she told Bitting that Dodson was holding her job over her for sex.

Bitting asked Merritt if she wanted to tell anyone at Shaw about Dodson's conduct, and she

responded, "No."  (Doc. 19-2, Merritt Deposition, p. 35)  Merritt described the day she quit this

way:

> I pretty much told [Bitting] – I didn't go into detail, I told him that Greg Dodson had
> been holding my job over my head for sex.  And I tried to explain to him more about
> it.  I couldn't.  I couldn't hardly talk.  He asked me if I wanted to go down to Shaw
> and tell them about it and I said no, I can't.  I can't.  And I couldn't, there's just – I
> sat there for a minute and he said, 'Are you sure?' I said, 'No.' I said, 'I can't do it.'
> I said, 'Let me sit here a minute and I'm fixing to leave,' I said, 'and I can't come
> back.  I quit.  I cannot come back.  I can't do it no more.'  And I sat there for a minute
> and he said, 'Take your time,' and I said okay, and I thanked him and got up and I
> walked out.  Didn't say a word to nobody.  I walked – I got my purse, my jacket,
> something else, walked to my car, and left.

*Id.*  This was the first time Merritt reported Dodson's conduct to anyone at Albemarle.  Merritt

never reported Dodson's conduct to anyone at Shaw.  Merritt knew both Shaw and Albemarle

had policies against sexual harassment.

On February 16, 2005, Merritt filed this suit alleging violations of the Arkansas Civil Rights Act of 1993, Ark. Code Ann. § 16-123-101, et seq. Specifically, Merritt alleged Dodson sexually harassed her, Albemarle was vicariously liable for his conduct, and she was constructively discharged. In its motion for summary judgment, Albemarle argues (1) it was not Merritt's employer and therefore cannot be liable for any harassment alleged by Merritt, (2) Dodson was not Merritt's supervisor, (3) Albemarle did not take a tangible employment action against Merritt and Merritt never reported Dodson's sexual harassment to Albemarle or Shaw, and (4) Merritt's constructive discharge allegations fail because Albemarle took no actions to render her job intolerable.

## II. DISCUSSION

The standard of review for summary judgment is well established. The Federal Rules of Civil Procedure provide that when a party moves for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, show that there is no genuine issue as to a material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c); *Krenik v. County of Le Sueur*, 47 F.3d 953 (8th Cir. 1995). The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial-whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  *See also Agristor Leasing v. Farrow*, 826 F.2d 372 (8th Cir. 1987); *Niagra of Wisconsin Paper Corp. v. Paper Indus. Union-Management Pension Fund*, 800 F.2d 742, 746 (8th Cir. 1986).

The Court in *Scherr Const. Co. v. Greater Huron Development Corp.*, 700 F.2d 463, 465 (8th Cir. 1983)(quoting, *Burst v. Adolph Coors Co.*, 650 F.2d 930, 932 (8th Cir.1981)(emphasis added), a case involving the entry of summary judgment, stated:

> [w]hen a motion for summary judgment is made and supported by affidavits, the party opposing the motion may not rest on the allegations in his pleadings but must resist the motion by setting forth *specific facts* that raise a genuine issue of fact for trial.

Claims premised under the Arkansas Civil Rights Act are analyzed in the same manner as claims under Title VII, 42 U.S.C. §§ 2000e, et seq.  *Brown v. Arkansas State Highway Transp. Dept.*, 358 F.Supp.2d 729 (W.D.Ark. 2004).  For the purposes of this opinion, the Court assumes *arguendo* that Merritt's employment status allows her to bring a claim under Title VII.  The Court turns to the issues of whether Dodson was Merritt's supervisor, whether Albemarle took a tangible employment action against Merritt and whether Merritt's failure to report Dodson's conduct to either Albemarle prior to quitting or to Shaw exempts Albemarle from liability.

To answer whether Dodson was Merritt's supervisor for the purpose of holding Albemarle vicariously liable for Dodson's conduct, the Court must decide whether Dodson had the power (not necessarily exercised) to take tangible employment action against Merritt, such as the authority to hire, fire, promote, or reassign her to significantly different duties.  *See Joens v. John Morrell & Co.*, 354 F.3d 938 (8thCir. 2004)(adopting the majority view and narrow view of "supervisor" for Title VII purposes as set forth in *Hall v. Bodine Elec. Co.*, 276 F.3d 345 (7thCir.

2002)).[1] Dodson's status as an alleged supervisor is analogous to the situation in *Weyers v. Lear Operations Corp.*, 359 F.3d 1049 (8thCir. 2004). In *Weyers*, a sister district court decided an alleged harasser, Ben Brosius, was Weyers' supervisor. In deciding whether the employer could avail itself of an affirmative defense, the Eighth Circuit Court of Appeals reversed, holding that Brosius did not meet the definition of a supervisor as set out in *Joens*. Judge Wollman wrote,

> Although Brosius had the authority as team leader to assign employees to particular tasks, he could not reassign them to significantly different duties. While it is true that Brosius signed at least three of Weyers's initial performance evaluations and that Tony Mendez acknowledged that he had based his decision to terminate Weyers at least in part on Weyers's job evaluation scores, Brosius himself did not have the authority to take tangible employment action against Weyers. As was the case in *Joens*, he could not hire, fire, promote or discipline employees within his department. Accordingly, we conclude that in light of the definition set forth in *Joens*, the evidence does not support the district court's finding that Brosius was in fact Weyers's supervisor.

*Weyers*, 359 F.3d at 1057. Dodson's role at Albemarle is analogous to the role of Brosius in *Weyers*. Dodson assigning Merritt tasks with Eades is not enough to establish that Dodson was Merritt's supervisor nor is it enough to establish Dodson could take a tangible employment action against Weyers. Furthermore, Merritt had to perform certain tasks with Eades regardless of whether or not Dodson assigned those tasks. Merritt and Eades were the only two lubrication technicians in the Lubrication Group, and certain tasks required two lubrication technicians to complete. Dodson did not assign Merritt any tasks she would not have had to complete anyway. The Court finds Dodson was not Merritt's supervisor because he did not have the power to take a tangible employment action against her.

---

[1] The minority view of the term "supervisor" for Title VII purposes asks whether the alleged harasser possessed the "authority to direct the employee's daily work activities[.]" *Joens*, 354 F.3d at 940 *quoting Mack v. Otis Elevator Co.*, 326 F.3d 116 (2dCir.), *cert. denied*, 540 U.S. 1016, 124 S.Ct. 562 (2003).

Since Dodson was not Merritt's supervisor, Merritt must show that Albemarle knew or should have known of the alleged sexual harassment by Dodson to establish liability under Title VII. *See Cheshewalla v. Rand & Son Const. Co.*, 415 F.3d 847 (2005). It is undisputed that Merritt did not report Dodson's conduct to Bitting, the supervisor of the PM/PD Group, the Human Resources Department at either Albemarle or Shaw, or anyone else at Albemarle or Shaw until the day she quit. When she told Bitting about Dodson holding her job over her for sex, Bitting asked Merritt if she wanted to tell anyone at Shaw about Dodson's conduct. Merritt responded that she did not want to report Dodson's conduct to Shaw and quit her job. There is no evidence that Albemarle knew or should have know of Dodson's alleged sexual harassment. Therefore, the Court finds Merritt cannot establish that Albemarle knew or should have known of Dodson's sexual harassment prior to Merritt quitting her job. So, Albermarle's motion for summary judgment should be granted and Merritt's claims must be dismissed.

### III. CONCLUSION

For the reasons states herein and above, the Court finds Albemarle's Motion for Summary Judgment should be and hereby is **granted.** An order of even date shall issue.

IT IS SO ORDERED, this 22nd day of June, 2006.

 /s/ Harry F. Barnes
Hon. Harry F. Barnes
U.S. District Court
